**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELLEN CHALK; PAUL STEWART,
husband and wife, and all others
similarly situated,
                    *Plaintiffs-Appellants,*

                    v.

T-MOBILE USA, INC., a Delaware
corporation; SONY ERICSSON
MOBILE COMMUNICATIONS USA,
INC., a Delaware corporation,
                    *Defendants-Appellees.*

No. 06-35909

D.C. No.
CV-06-00158-BR

OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
July 10, 2008—Portland, Oregon

Filed March 27, 2009

Before: Alfred T. Goodwin, Harry Pregerson, and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge Reinhardt

3731

## COUNSEL

Karen E. Read, Lake Oswego, Oregon, for the plaintiffs-appellants.

Scott Ferrell, John O'Malley, and Ward Lott, Call, Jensen & Ferrell, Newport Beach, California, Nancy Erfle, Christopher Dorr, and Michael T. Garone, Schwabe, Williamson, & Wyatt, Portland, Oregon, for the defendants-appellees.

**OPINION**

REINHARDT, Circuit Judge:

In this case, we consider whether the district court properly dismissed a consumer class action pursuant to an arbitration agreement between T-Mobile and its customers. We hold that the agreement's class action waiver is substantively unconscionable and therefore unenforceable under Oregon law. We also note that under the agreement the waiver is not severable. We reverse the district court's order dismissing the case pending arbitration.

## I.   Procedural and Factual Background

Plaintiffs-Appellants Paul Stewart and Ellen Chalk bought a GC79 GPRS/Wireless LAN PC card ("card"), a device manufactured by Defendant-Appellee Sony Ericsson Mobile Communications (USA), Inc. ("Sony") that enables computers to connect wirelessly to the Internet, from Defendant-Appellee T-Mobile USA, Inc. ("T-Mobile"). Plaintiffs also signed a one-year service agreement with T-Mobile. The Service Agreement provided:

> BY SIGNING THIS FORM OR ACTIVATING OR USING T-MOBILE SERVICE I ACKNOWLEDGE AND AGREE THAT:
>
> • THIS IS MY CONTRACT WITH T-MOBILE USA, INC. FOR WIRELESS SERVICES. MY CONTRACT IS CALLED A "SERVICE AGREEMENT" AND IT INCLUDES THIS DOCUMENT, THE SEPARATE T-MOBILE TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION. THE T-MOBILE TERMS AND CONDITIONS ARE IN MY WELCOME GUIDE OR WERE OTHERWISE PROVIDED TO ME AT THE TIME OF SALE.

. . . BY SIGNING, I ACKNOWLEDGE THAT I HAVE RECEIVED AND READ THIS DOCUMENT, THE T-MOBILE TERMS AND CONDITIONS, AND MY RATE PLAN INFORMATION. . . .

- I UNDERSTAND THAT THE SERVICE AGREEMENT AFFECTS MY AND T-MOBILE'S LEGAL RIGHTS. AMONG OTHER THINGS, IT:

  - **REQUIRES MANDATORY ARBITRATION OF DISPUTES;**

  - **REQUIRES MANDATORY WAIVER OF THE RIGHT TO JURY TRIAL AND WAIVER OF ANY ABILITY TO PARTICIPATE IN A CLASS ACTION;**

The box containing the card and Welcome Guide was sealed with a label that stated:

> **IMPORTANT**
>
> Read the enclosed T-Mobile Terms & Conditions. By using T-Mobile service, you agree to be bound by the Terms & Conditions, including the mandatory arbitration and early termination fee provisions.

The first paragraph of the Terms and Conditions instructs purchasers to read the terms carefully and advises those who do not agree to refrain from using the service or the unit. Section Three of the Terms and Conditions contains a mandatory arbitration clause, which provides that the parties will arbitrate all claims, and, in doing so, will follow the American Arbitration Association's published wireless industry arbitration rules. The clause states that each party agrees to pay its

"own other fees, costs and expenses including those for counsel, experts, and witnesses."

That section also contains a class action waiver and a severability clause:

> Neither you nor we may be representative of other potential claimants or a class of potential claimants in any dispute . . . YOU AND WE ACKNOWLEDGE AND AGREE THAT THIS SEC. 3 WAIVES ANY RIGHT TO A JURY TRIAL OR PARTICIPATION AS A PLAINTIFF IN A CLASS ACTION. IF A COURT OR ARBITRATOR DETERMINES THAT YOUR WAIVER OF YOUR ABILITY TO PURSUE CLASS OR REPRESENTATIVE CLAIMS IS UNENFORCEABLE, THE ARBITRATION AGREEMENT WILL NOT APPLY AND OUR DISPUTE WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION. . . . SHOULD ANY OTHER PROVISION OF THIS ARBITRATION AGREEMENT BE DEEMED UNENFORCEABLE, THAT PROVISION SHALL BE REMOVED, AND THE AGREEMENT SHALL OTHERWISE REMAIN BINDING.

For approximately three weeks after the purchase of the card, Plaintiffs were able to insert it into their IBM ThinkPad laptop computer ("ThinkPad") and connect to the internet without any difficulty. They then did not attempt to use the card again for a few months, at which time they were unable to insert the card into their ThinkPad. They contacted T-Mobile technical support several times and received refurbished cards on three separate occasions. They could not, however, insert any of the refurbished cards into the Think-Pad. After they were unable to insert the third card, staff from T-Mobile technical support informed Plaintiffs that they would have to pursue the issue at the T-Mobile store where they purchased the original card. At the store, a Sony repre-

sentative attempted to insert the card and he failed to succeed in this task as well. He then promised to contact Plaintiffs about how to solve the problem. Plaintiffs never heard back from him, despite multiple email inquiries.

Ultimately, Plaintiffs filed a class action lawsuit in federal district court against T-Mobile and Sony. Plaintiffs alleged violations of various federal and state laws, including Oregon's Unlawful Trade Practices Act ("UTPA"), OR. REV. STAT. § 646.605, the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and the federal Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs also raised a number of common law theories of liability, including negligence, unjust enrichment, fraud by concealment, negligent misrepresentation, breach of implied warranties, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness. The complaint alleged that defendants knew or should have known that the card "was not compatible and/or did not fit into the IBM ThinkPad laptop" computers, and that Defendants allowed customers to purchase cards and enter into long-term service contracts from which consumers would receive no benefit without a compatible card.

Three months after Plaintiffs filed their lawsuit, Defendants filed a motion to dismiss the case or stay proceedings and compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). Plaintiffs opposed the motion, contending that the arbitration clause was unconscionable and therefore unenforceable. The district court granted Defendants' motion and dismissed the case. The court agreed with Plaintiffs that the provision requiring each party to bear its own attorney fees was unconscionable because Oregon's UTPA provides for prevailing party attorney fees, and severed that provision from the agreement.[1] The court rejected Plaintiffs' remaining arguments, however, including the argument that the prohibition against class actions was unconscionable, and

---

[1]Neither Plaintiffs nor Defendants challenge this ruling on appeal.

concluded that Plaintiffs were required to arbitrate their claims under the agreement.[2] Plaintiffs filed a timely notice of appeal.[3]

## II.   Standard of Review and Applicable Law

We review the district court's ruling on the validity and scope of an arbitration clause de novo. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).

The Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Plaintiffs allege that T-Mobile's arbitration agreement is unconscionable. As we have repeatedly recognized, unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable. *Shroyer*, 498 F.3d at 981; *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (en banc).

Both parties recognize that unconscionability is governed by state law—in this case, by Oregon law. We must "approximate state law as closely as possible" and are bound by the

---

[2]The court determined that Plaintiffs' claims against Sony were subject to arbitration under the provision providing that "this agreement to arbitrate extends to claims that you assert against other parties, including . . . equipment manufacturers and dealers, if you also assert claims against [T-Mobile] in the same proceeding." Plaintiffs do not challenge this ruling on appeal.

[3]The district court had jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 2310, and 15 U.S.C. § 1125(a). *See The Anaconda v. Am. Sugar Refining Co.*, 322 U.S. 42, 44 (1944) (noting that the FAA "obviously envisages action in a court on a cause of action and does not oust the court's jurisdiction of the action, though the parties have agreed to arbitrate"). We have jurisdiction over the district court's order dismissing Plaintiffs' claims pending arbitration pursuant to 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291. *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 961-62 (9th Cir. 2007).

pronouncements of the state's highest court. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980)). Where the state supreme court has not yet decided an issue but "there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." *Ryman v. Sears, Roebuck and Co.*, 505 F.3d 993, 994 (9th Cir. 2007) (emphasis omitted).

## III.　Analysis

### A.　Burden of Production

We begin by addressing Defendants' assertion that Plaintiffs have not met their burden of producing evidence to support their claims of unconscionability. Defendants claim that "[g]overning law required [Plaintiffs] to prove both that jurisdiction existed and that the arbitration agreement was unconscionable — a burden Plaintiffs failed to meet by failing to submit any competent evidence regarding any of the facts and circumstances in existence at the time the binding arbitration agreement was made." Defendants-Appellees' Brief at 13.

**[1]** Under the Oregon law of unconscionability, Defendants' argument is meritless. First, although "[t]he party asserting unconscionability bears the burden of demonstrating that the arbitration clause in question is, in fact, unconscionable," *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156, 159-60 (Or. Ct. App. 2007), Oregon's courts consider the contract itself to be evidence of unconscionability where the terms of the contract are unconscionable on their face. In *Motsinger*, for example, the Oregon Court of Appeals considered whether a contract provision requiring the plaintiff to submit all potential claims to arbitration without similarly binding the plaintiff's employer was unconscionable. *Id.* at 166. The court based its decision entirely on the terms of the provision. *Id.*

Under Defendants' approach, however, this analysis would have been improper because it was not supported by "evidence" other than the contract terms at issue. Likewise, in *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940 (Or. Ct. App. 2007), the Oregon Court of Appeals considered the unconscionability of two different contract provisions by looking exclusively to the contract terms, without considering any other evidence. *See id.* at 950-51 (class action waiver); *id.* at 952-53 (confidentiality provision). Because the terms of T-Mobile's arbitration agreement are properly before this court and provide evidence of unconscionability, Plaintiffs have met their burden of production.

Defendants's reliance on *Motsinger* is misplaced. *Motsinger* involved an arbitration agreement that was *silent* as to how costs would be apportioned between the parties and no evidence was introduced as to what those costs were likely to be. *Motsinger*, 156 P.3d at 161. While the likely effect of a class action waiver, a confidentiality provision, or a non-mutual agreement to arbitrate can be evaluated by reference to the terms of the contract alone, *see Motsinger*, 156 P.3d at 166; *Vasquez-Lopez*, 152 P.3d at 950-53, a contract's *silence* regarding a particular issue provides little evidence as to the likely effect of that omission upon the plaintiff; the contract simply presents a *risk* of unconscionability. In *Motsinger*, the Oregon Court of Appeals found that the mere possibility that the failure to apportion costs would result in hardship for the plaintiff was, in the absence of evidence suggesting that the plaintiff would in fact face a serious adverse consequence, insufficient to render the contract unconscionable. 156 P.3d at 162.

Here, Plaintiffs' allegations of unconscionability do not depend upon mere possibilities in the operation of the agreement: It is undisputed that the arbitration agreement, among other provisions, waives the customer's ability to participate in class actions, prohibits an award of attorney fees to a prevailing customer, and requires that all arbitrations be con-

ducted according to the American Arbitration Association's Wireless Industry Arbitration Rules. The likely effect of those provisions can be evaluated by looking to their terms alone. *See id.* at 166; *Vasquez-Lopez*, 152 P.3d at 950-53. Accordingly, *Motsinger*'s requirement of additional evidence is irrelevant here, and Plaintiffs have met their burden of production.

### B.     Unconscionability

**[2]** In assessing a claim of unconscionability, Oregon courts consider both procedural and substantive unconscionability. *See Vasquez-Lopez*, 152 P.3d at 948. Although both forms of unconscionability "are relevant, . . . only substantive unconscionability is absolutely necessary." *Id.*

### 1.    Procedural Unconscionability

**[3]** Procedural unconscionability focuses on two factors in contract formation: oppression and surprise. *Motsinger*, 156 P.3d at 160.

> Oppression arises when there is inequality in bargaining power between the parties to a contract, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice. Surprise involves the extent to which the supposedly agreed terms were hidden from the party seeking to avoid enforcement of the agreement.

*Id.* (internal citations omitted).

In *Motsinger*, the Oregon Court of Appeals explained that a contract of adhesion—an agreement presented on a take-it-or-leave-it basis—reflects unequal bargaining power, but the adhesive nature of a contract standing alone is insufficient to render an agreement procedurally unconscionable. *Id.* at 160-61. The court declined to find procedural unconscionability where an arbitration clause was not hidden or disguised and

where the plaintiff was given time to read the documents before assenting to their terms. *Id.* at 161 ("A party is presumed to be familiar with the contents of any document that bears the person's signature.") (internal quotations and citation omitted).

[4] Under the circumstances of the present case, the district court properly concluded that T-Mobile's arbitration agreement is not procedurally unconscionable. The take-it-or-leave-it nature of T-Mobile's agreement is insufficient to render it unenforceable. Stewart's signature appears on the Service Agreement below the arbitration clause and class action waiver—both of which are featured in boldface and uppercase text. Although Plaintiffs are correct that the Welcome Guide contained additional terms, the box containing the device and Welcome Guide was sealed with a label that brought the Terms and Conditions to the buyer's attention. To access the equipment, Plaintiffs were required to break the seal of the label. Under these circumstances, there is insufficient evidence of oppression or surprise to render the agreement procedurally unconscionable under Oregon law.

## 2.  Substantive Unconscionability

[5] The arbitration agreement, while not procedurally unconscionable, was adhesive and therefore reflected an underlying inequality in the parties' ability to bargain. *See, e.g.*, *Best v. U.S. Nat'l Bank of Oregon*, 739 P.2d 554, 556 (Or. 1987); *see also Vasquez-Lopez*, 152 P.3d at 948. Because Oregon law does not *require* that a contract exhibit procedural unconscionability in order to be invalid, *see Vasquez-Lopez*, 152 P.3d at 948 ("[O]nly substantive unconscionability is absolutely necessary."), we must still determine whether the terms of T-Mobile's arbitration agreement are unfairly one-sided. To determine whether the district court properly dismissed Plaintiffs' claims pending arbitration, "we must consider whether the arbitration clause is rendered unconscionable when the disparity in bargaining power"

reflected in the clause's adhesive nature "is combined with terms that are unreasonably favorable to the party with the greater power." *Motsinger*, 156 P.3d at 161 (internal quotations and citation omitted); *see also Carey v. Lincoln Loan Co.*, 125 P.3d 814, 830 (Or. Ct. App. 2005) ("Although there is no evidence of trickery or deceit, as there often is in unconscionability cases, the gross inequality in knowledge and bargaining power is sufficient to require us to consider the substance of the challenged provisions.").[4] Thus, if the terms of the agreement are unreasonably favorable to T-Mobile, the agreement may be unenforceable despite its lack of procedural unconscionability.

Plaintiffs allege that numerous provisions of the arbitration agreement are substantively unconscionable, but we need address only one to resolve the present dispute. In an opinion issued after the district court's order in this case, the Oregon Court of Appeals held that a class action waiver in an arbitration provision may be substantively unconscionable. *Vasquez-Lopez*, 152 P.3d at 949-50. Applying *Vasquez-Lopez*, we conclude that the class action waiver in the present case is substantively unconscionable and unenforceable under Oregon law.

The *Vasquez-Lopez* court explained that a class action waiver in a consumer contract is unreasonably favorable to a company like T-Mobile for two distinct reasons. First, such a waiver is inherently one-sided when contained in a consumer contract. *Id.* Even if the waiver on its face applies equally to

---

[4]California courts take a similar approach, and have explained that they evaluate unconscionability on a sliding scale. The more substantively unconscionable a provision, the less procedural unconscionability is required. *Armendariz v. Found. Health Psychcare Servs.*, *Inc.*, 24 Cal. 4th 83, 114 (Cal. Ct. App. 2000) (" 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' ") (quoting 15 *Williston on Contracts* (3d ed. 1972) § 1763A, pp. 226-27).

both parties, it is entirely unilateral in effect. Wryly noting the well-known literary passage that " 'the majestic equality of the laws . . . forbid[s] rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread,' " the Oregon Court of Appeals observed, "Although the arbitration rider with majestic equality forbids lenders as well as borrowers from bringing class actions, the likelihood of the lender seeking to do so against its own customers is as likely as the rich seeking to sleep under bridges." *Id.* (quoting Anatole France, *The Red Lily* 95 (Winifred Stephens trans., Frederic Chapman ed., 1894)).

Second, a consumer class action waiver frequently prevents individuals from vindicating their rights. A ban on class action denies plaintiffs a crucial opportunity "without which many meritorious claims would simply not be filed" because the cost of pursuing each claim individually outweighs the potential relief. *Id.* at 950. " 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' " *Id.* (quoting *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). As *Vasquez-Lopez* explained, by preventing consumers from pursuing small but meritorious claims a class action waiver "gives defendant[s] a virtual license to commit, with impunity, millions of dollars' worth of small-scale fraud." *Id.* at 951.

**[6]** Like the Supreme Courts of California and Washington, *see Discover Bank v. Superior Court*, 113 P.3d 1100, 1116 (Cal. 2005); *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007), the *Vasquez-Lopez* court declared that a class action waiver in a contract where individual damages are likely to be small is substantively unconscionable as a matter of state contract law. Because Defendants have presented no convincing evidence that Oregon's Supreme Court would disagree with *Vasquez-Lopez*,[5] we must follow *Vasquez-Lopez* in

---

[5]Notably, Defendants do not cite *any* Oregon state court decisions to support their argument that the Oregon Supreme Court would uphold the class action waiver at issue here.

determining whether T-Mobile's waiver is substantively unconscionable. *Ryman*, 505 F.3d at 994.[6]

[7] The class action waiver in T-Mobile's Service Agreement presents the same problems that led the *Vasquez-Lopez* court to find substantive unconscionability in that case. First, like the class action waiver in *Vasquez-Lopez*, T-Mobile's waiver is unilateral in effect: It can hardly be imagined that T-Mobile or its suppliers would ever want or need to bring a class action against T-Mobile's customers.

[8] Second, the class action waiver here creates the same disincentive to litigate recognized in *Vasquez-Lopez*. The actual damages alleged by Plaintiffs do not exceed $693.63, which includes the monthly service fee over the one-year contract duration and the cost of the card. *Cf. Shroyer*, 498 F.3d at 984 (noting that individual damages of less than $1,000 qualify as small amounts for the purpose of determining whether class action waivers are enforceable under California law). Moreover, many of the customer claims covered by the class action waiver will be much smaller than Plaintiffs' claim, because they will involve something less than a total hardware failure resulting in a complete loss of service. We must evaluate unconscionability "under the circumstances existing at the time of the making of the contract," *W.L. May Co., Inc.*, 543 P.2d 283, 286 (Or. 1975), and it is impossible to know at the time of formation whether a customer's future claims against T-Mobile will involve a total failure or some-

---

[6]Nothing in *Vasquez-Lopez* can be construed to establish a rule that is specific to arbitration agreements. Rather, *Vasquez-Lopez* "is simply a refinement of the unconscionability analysis applicable to contracts generally in [Oregon]." *Shroyer*, 498 F.3d at 987. Thus, the FAA does not preempt application of the *Vasquez-Lopez* rule to T-Mobile's arbitration agreement. *See id.* at 987-88. Likewise, because 9 U.S.C. § 2 explicitly requires us to apply "such grounds as exist at law or in equity for the revocation of any contract" in order to determine whether the class action waiver at issue here is enforceable, Oregon law, and not the policy behind the FAA, governs our analysis.

thing far less costly. These latter potential claims are as relevant to our analysis of the waiver's unconscionability as Plaintiffs' actual claim. *Compare Vasquez-Lopez*, 152 P.3d at 951 ("[W]e are simply unconvinced that any significant number of plaintiffs with claims under, say $50, would be sufficiently motivated to spend the time and risk the expense necessary to take the claim to arbitration."); *with id.* at 944 (noting that the jury had awarded $26,639.73 in economic damages to the plaintiffs). Given the small size of the individual claims covered by the arbitration agreement, the class action waiver here, like the waiver in *Vasquez-Lopez*, is likely to prevent T-Mobile's customers from vindicating their rights because the time and expense of prosecuting such claims makes it impracticable "to embark on litigation in which the optimum result might be more than consumed by the cost." *Id.* at 950 (quoting *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 338 (1980)).[7]

[9] Because T-Mobile's class action waiver is identical in effect to the class action waiver in *Vasquez-Lopez*, it is substantively unconscionable as a matter of Oregon law. We recognize that, under Oregon law, "every case [involving an allegedly unconscionable contract] is decided on its own facts," *id.* at 948, and, as in *Shroyer*, "[w]e do not hold that all class action waivers are necessarily unconscionable." 498

---

[7]We note that the substantive unconscionability of T-Mobile's class action waiver is magnified by its requirement that each party bear its own costs. We agree with the district court's decision that this provision is unconscionable as well, as it discourages individuals from litigating by precluding an award of otherwise available attorney fees to a prevailing plaintiff under the Oregon UTPA. OR. REV. STAT. § 646.638(3). *Vasquez-Lopez* held that, even when an award of attorney fees *is* available, individuals may not "sufficiently be motivated to spend the time and risk the expense necessary to take [their] claim[s] to arbitration." 152 P.3d at 951. Where the possibility of an award of attorney fees is eliminated, the costs of individual action become even more onerous and the likelihood that the class action waiver provides T-Mobile with a "license to commit, with impunity, millions of dollars' worth of small-scale fraud," *id.*, is even greater.

F.3d at 983. Instead, our decision simply applies the holding of *Vasquez-Lopez*—that a class action waiver in a consumer contract involving small claims is substantively unconscionable—to the virtually identical class action waiver in T-Mobile's arbitration agreement.

Defendants attempt to distinguish *Vasquez-Lopez* from the present case by pointing to the procedural unconscionability of the contract in *Vasquez-Lopez* and to the hardships resulting from that contract's cost-sharing provisions. Although these issues were relevant to the *Vasquez-Lopez* court's determination that the contract *as a whole* was unenforceable, neither bears any relevance to the court's holding that the class action waiver in that contract was substantively unconscionable. That analysis was based entirely on the unilateral nature of the waiver and the disincentive to litigate it created, both of which are present here.

Defendants also attempt to distinguish *Vasquez-Lopez* by noting that Plaintiffs claim damages of more than $696.63, while *Vasquez-Lopez* discussed "claims of under, say, $50.00." *Vasquez-Lopez*, 152 P.3d at 951. Like Defendants' other efforts to distinguish *Vasquez-Lopez*, this argument is meritless. *Vasquez-Lopez* mentioned claims of less than $50 only in response to the defendant's argument that the availability of attorney fees under that contract provided a sufficient incentive to litigate. The court in no way limited its prior elaboration of the reasons why a class action waiver in a consumer contract involving small claims is substantively unconscionable. By noting that claims of under $50 were likely to be covered by the contract at issue in *Vasquez-Lopez*, the Oregon Court of Appeals simply demonstrated that the question under Oregon law, as under California law, is whether the contract "occurred 'in a setting in which disputes between the contracting parties predictably involve small amounts of damages.'" *Shroyer*, 498 F.3d at 984 (quoting *Discover Bank*, 113 P.3d at 1110). For reasons already discussed, the T-Mobile class action waiver, like the waiver in *Vasquez-Lopez*,

is likely to cover "claims of less than, say, $50.00." 152 P.3d at 951; *see also Shroyer*, 498 F.3d at 984 (finding "individual damages in the hundreds of dollars" to be "an objectively small amount" and "a small enough sum to satisfy" the requirement that the arbitration agreement occur in a setting in which disputes will predictably involve small amounts of damages). Accordingly, *Vasquez-Lopez* cannot be distinguished on the basis of the size of the claims at issue in this case.

In view of the above, it is plain that, under *Vasquez-Lopez*, T-Mobile's class action waiver is substantively unconscionable under Oregon law.

### 3. Enforceability and Severability

**[10]** The substantively unconscionable class action waiver here was contained in a contract of adhesion reflecting the parties' unequal bargaining power. To be certain, Plaintiffs did not experience the oppression and surprise evident in *Vasquez-Lopez*. *See* 152 P.3d at 943 (noting that plaintiffs could not read the contract they signed and were misled as to the contract's provisions). Nonetheless, the contract here was adhesive, and Plaintiffs were unable to negotiate with T-Mobile over its terms. Under *Vasquez-Lopez*, this combination of unequal bargaining power and clearly demonstrated substantive unconscionability—the only absolute necessity for a finding of unenforceability—is sufficient to render the class action waiver unenforceable as a matter of Oregon law.

**[11]** In the usual case, we would be required to determine whether the unenforceable class action waiver should be severed from the arbitration agreement as a whole. *See* OR. REV. STAT. § 72.3020 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the

application of any unconscionable clause as to avoid any unconscionable result."); *Vasquez-Lopez*, 152 P.3d at 953 (after a finding of unconscionability, "the trial court could have severed the unconscionable provisions or declared the entire [arbitration] rider to be unenforcable"). However, in the present case the arbitration agreement itself includes a provision prohibiting severance of the class action waiver. Therefore, in accordance with its severability clause, the arbitration agreement as a whole is unenforceable. *See Shroyer*, 498 F.3d at 986-87.[8]

## IV. Conclusion

Under Oregon law, "only substantive unconscionability is absolutely necessary" to find that an agreement is unenforceable. *Vasquez-Lopez*, 152 P.3d at 948. Because Oregon courts have declared that class action waivers in consumer contracts where individual damages are likely to be small are substantively unconscionable and the waiver here was contained in a contract of adhesion, the class action waiver in T-Mobile's arbitration agreement is not enforceable. *Id.* at 950. Because the arbitration agreement prohibits severance of the waiver, the agreement as a whole is unenforceable. We therefore reverse the district court's decision to dismiss the case pending arbitration.

**REVERSED and REMANDED.**

---

[8]Because the class action waiver, standing alone, renders the agreement unenforceable, we need not address the alleged unconscionability of the arbitration agreement's limits on discovery.