**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEBORAH HOOPER, an individual,
            *Plaintiff-Appellant,*

v.

COUNTY OF SAN DIEGO; SAN DIEGO
COUNTY SHERIFF'S DEPARTMENT;
WILLIAM B. KOLENDER, Sheriff, in
his official and individual
capacity; KIRK TERRELL, Deputy
Sheriff, in his official and
individual capacity; DOES 1
THROUGH 10,
            *Defendants-Appellees.*

No. 09-55954

D.C. No.
3:07-cv-01647-
JAH-CAB

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
June 8, 2010—Pasadena, California

Filed January 4, 2011

Before: Stephen S. Trott and William A. Fletcher,
Circuit Judges, and Charles R. Breyer,* District Judge.

Opinion by Judge William A. Fletcher

*The Honorable Charles R. Breyer, United States District Judge for the
Northern District of California, sitting by designation.

**COUNSEL**

Robert Mann, Donald. W. Cook, MANN COOK ATTORNEYS AT LAW, Los Angeles, California, for the appellant.

Stephanie E. Kish, COUNTY OF SAN DIEGO OFFICE OF COUNTY COUNSEL, San Diego, California, for the appellee.

---

**OPINION**

W. FLETCHER, Circuit Judge:

Deborah Hooper appeals the district court's grant of summary judgment to defendants on her excessive force claims. The district court held that Hooper's § 1983 claim was barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), as a result of her conviction for resisting a peace officer under California Penal Code § 148(a)(1). We reverse the district court's decision on Hooper's § 1983 claim.

## I. Background

On May 9, 2006, Deborah Hooper was detained by a privately employed loss prevention officer at a Long's Drugs store in Encinitas, California. The officer believed that Hooper had committed petty theft. He handcuffed her and held her in a second-floor office in the store. In response to a radio call, San Diego Deputy Sheriff Kirk Terrell arrived at the store with his "department issue canine" in his patrol car.

Hooper was calm and compliant, so Deputy Terrell removed the handcuffs. Deputy Terrell took statements from Hooper and the loss prevention officer. Deputy Terrell completed a Notice to Appear in criminal court for Hooper and informed her that he was going to search her car. Deputy Ter-

rell then walked with Hooper outside to the parking lot, and Hooper gave him her car keys. Deputy Terrell discovered in the car a crystalline substance he believed to be methamphetamine. Deputy Terrell then approached Hooper, grabbed her left wrist, and told her she was under arrest for possession of methamphetamine. Hooper jerked her hand away from Deputy Terrell. In the struggle that ensued, Hooper ended up on the ground, lying on her stomach. Deputy Terrell lay on her back, covering her, with his head pointed in the same direction as hers. Deputy Terrell called for backup using his hand-held radio.

What happened next is disputed. Taking the evidence in the light most favorable to Hooper, she struggled briefly with Deputy Terrell after they were on the ground by "jerking side to side." Deputy Terrell got both of Hooper's hands behind her back. She stopped resisting when Deputy Terrell instructed her to do so. There were a number of spectators near Deputy Terrell's patrol car. Deputy Terrell screamed, "Get away from my car. Get away from my car. Come here, Kojo." Deputy Terrell's German Shepherd ran toward Hooper, barking and growling. There is no significant dispute about what happened then. Deputy Terrell's dog bit Hooper's head, lost its hold, and then bit and held Hooper's head. The dog released Hooper's head when Deputy Terrell's backup arrived. According to Deputy Terrell, all of this took place — from grabbing Hooper's wrist until the arrival of backup — in a span of 45 seconds.

The dog's bites tore off large portions of Hooper's scalp. Hooper subsequently underwent skin graft surgery. She has permanently lost all of her hair over large areas of her head and has disfiguring scars where her scalp was torn away.

Hooper pled guilty to resisting a peace officer under California Penal Code § 148(a)(1). She does not dispute the lawfulness of her arrest, nor does she dispute that she resisted

arrest. However, she contends that Terrell used excessive force in response to her resistance.

Hooper brought suit under 42 U.S.C. § 1983 and analogous provisions of California law. The district court granted summary judgment to defendants on the ground that Hooper's excessive force claims are barred under Heck and its state-law analogues. For the reasons that follow, we disagree with the district court's analysis under *Heck*.

## II.    Standard of Review

We review a grant of summary judgment de novo. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 747 (9th Cir. 2010). We view the evidence in the light most favorable to Hooper, the non-moving party. *Huppert v. City of Pittsburg*, 574 F.3d 696, 701 (9th Cir. 2009). "A grant of summary judgment is inappropriate if there is 'any genuine issue of material fact or the district court incorrectly applied the substantive law.' " *Id.* (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 470 (9th Cir. 2007)).

## III.    Discussion

### A.    Hooper's § 1983 Claim

[1] When a plaintiff who has been convicted of a crime under state law seeks damages in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. If the answer is yes, the suit is barred. *Id.*

[2] Hooper pled guilty to a violation of California Penal Code § 148(a)(1). Section 148(a)(1) is often referred to as a statute prohibiting "resisting arrest." In fact, however, the statutory prohibition is much broader than merely resisting arrest. Section 148(a)(1) provides, "Every person who will-

fully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, . . . shall be [guilty of a misdemeanor]." For a conviction under § 148(a)(1) to be valid, the defendant must have "resist[ed], delay[ed], or obstruct[ed]" a police officer in the lawful exercise of his or her duties. The lawfulness of the officer's conduct is an essential element of the offense under § 148(a)(1). *See People v. Curtis*, 70 Cal.2d 347, 354-56, 357 (1969) ("an officer may only use *reasonable* force to make an arrest or to overcome resistance" (emphasis in original)).

### 1.   *Smith v. City of Hemet*

**[3]**  In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc), we considered a case very similar to the one now before us. As in our case, the plaintiff in *Smith* had pled guilty to a violation of § 148(a)(1). Police officers had responded to a domestic violence call. Smith stood on his front porch in his pajamas. He twice refused to comply with the officers' lawful orders to take his hands out of his pockets. He eventually took his hands out of his pockets, but then refused lawful orders to put his hands on his head and walk off the porch toward the officers, and to put his hands on his head and turn around. The officers then came onto the porch. They sprayed Smith in the face with pepper spray, slammed him against his front door, threw him down on the porch, and ordered a dog to bite him. Officers ordered the dog to bite Smith twice while he was still on the porch, first on the shoulder and neck and then on his left side and shoulder blade. The dog also sunk his teeth into Smith's arm. The officers then dragged Smith off the porch. Officers ordered the dog to bite Smith again, this time on his buttocks. The officers pepper sprayed Smith a total of four times.

**[4]**  Smith sued the officers for use of excessive force under 42 U.S.C. § 1983. We held that Smith's complaint was not barred by *Heck*. We noted that Smith violated § 148(a)(1)

during two different "phases." First, Smith resisted, delayed, or obstructed the officers before they came on the porch, in what we called the "investigative phase." *Smith*, 394 F.3d at 698. Second, he resisted, delayed, or obstructed the officers when they physically arrested him. We wrote that Smith's guilty plea could properly have been based on his behavior during the first phase. In that event, "a judgment in Smith's favor would not necessarily conflict with his conviction because his acts of resistance . . . would have occurred while the officers were engaged in the lawful performance of their investigative duties, not while they were engaged in effecting an arrest by the use of excessive force." *Id.* Because there was a factual basis for Smith's guilty plea to § 148(a)(1) that involved only lawful behavior by the police, success in Smith's § 1983 suit would "*not* necessarily imply the invalidity of his conviction and is therefore not barred by *Heck*." *Id.* at 699 (emphasis in original).

The facts of *Smith* allowed us to differentiate cleanly between two phases of the encounter with the police. In the first phase, when Smith stood on his porch and refused the officers' lawful orders, he violated § 148(a)(1) by "resist[ing], delay[ing], or obstruct[ing]" the police in the performance of their duties. In the second phase, when the police arrested him, Smith may or may not have violated § 148(a)(1), depending on whether the police acted lawfully in effecting the arrest. We quoted the California Court of Appeal's statement in *Susag v. City of Lake Forest*, 94 Cal.App.4th 1401, 1409 (2002): " 'If the officer was not performing his or her duties *at the time of the arrest*, the arrest is unlawful and the arrestee cannot be convicted under Penal Code section 148, subdivision (a).' " *Smith*, 394 F.3d at 695 (emphasis added in *Smith*). Based on this understanding of California law, we wrote, "Excessive force used by a police officer *at the time of arrest* is not within the performance of the officer's duty." *Id.* (emphasis in original). "It is, thus, clear that if Smith pled guilty to § 148(a)(1) based on his behavior *after* the officers

came onto the porch, during the course of the arrest, his suit would be barred by *Heck*." *Id.* at 697 (emphasis in original).

**[5]** This last-quoted statement in *Smith* is dictum because we ultimately held that Smith's § 148(a)(1) conviction could have been based on his conduct prior to the arrest phase. However, if this statement was based on a correct understanding of § 148(a)(1), Hooper's excessive force claims are barred under *Heck*, for in Hooper's case, unlike in Smith's, there were no distinct phases. Rather, Hooper's arrest was effectuated in a single continuous chain of events lasting a very brief time. However, a subsequent decision by the California Supreme Court makes clear that our dictum in *Smith* was based on a misunderstanding of § 148(a)(1).

### 2. Interpretation of § 148(a)(1) after *Smith*

**[6]** Four years after *Smith*, the California Supreme Court held that a conviction under § 148(a)(1) can be valid even if, during a single continuous chain of events, some of the officer's conduct was unlawful. *Yount v. City of Sacramento*, 43 Cal.4th 885 (2008). According to the Court, a conviction under § 148(a)(1) requires only that some lawful police conduct was resisted, delayed, or obstructed during that continuous chain of events. In other words, the California Supreme Court interpreted the elements of § 148(a)(1) differently than did the California Court of Appeal in *Susag*, the decision upon which we relied in *Smith*.

Yount was arrested in the parking lot of a convenience store in the early hours of the morning and placed in a patrol car. He was extremely drunk and belligerent. After Yount kicked out the side window of the patrol car, the officers tried to place him in leg restraints, but he continued to threaten them and was uncooperative. One of the officers sought to tase him. By mistake, the officer drew his gun rather than his taser. The officer shot Yount in his upper thigh. Yount pleaded no contest to a violation of § 148(a)(1). Yount then

filed a claim in state court for excessive force under 42 U.S.C. § 1983.

The California Supreme Court distinguished the facts in *Smith* from those in *Yount*. It wrote, "[H]ere, unlike in *Smith*, Yount's acts of resistance were *part of one continuous transaction* involving the officers' efforts to effect his arrest and cannot be segregated into an investigative phase and an independent arrest phase." 43 Cal.4th at 901 (emphasis added). The Court wrote that *Heck* would bar Yount's § 1983 claim to "the extent that [it] alleges that he offered no resistance, that he posed no reasonable threat of obstruction to the officers, and that the officers had no justification to employ *any* force against him at the time he was shot[.]" *Id.* at 898 (emphasis added). But Yount's § 1983 claim was not barred by *Heck* even though the allegedly excessive force was used during "one continuous transaction." *Id.* at 901.

**[7]** The Court wrote that Yount's claim was not *Heck*-barred because § 148(a)(1) contains no requirement that there be a distinct temporal separation between the use of reasonable force and the use of excessive force. If, at some time during a "continuous transaction" between an individual and an officer, the individual "resist[s], delay[s], or obstruct[s]" the officer in the lawful performance of his or her duty, that is a violation of § 148(a)(1). The individual's "resist[ing], delay-[ing], or obstruct[ing]" the officer does not lose its character as a violation of § 148(a)(1) if, at some other time during that same "continuous transaction," the officer uses excessive force or otherwise acts unlawfully. In explaining its holding, the Court in *Yount* quoted approvingly from a federal case, involving the use of non-deadly force, that made the same point:

> "[A] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the ini-

tial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in *one continuous chain of events*, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer."

*Id.* at 899 (quoting *Jones v. Marcum*, 197 F. Supp. 2d 991, 1005 n.9 (S.D. Ohio 2002) (emphasis added)). That is, two "factual contexts" can exist during "one continuous chain of events" — or, in the words of *Yount*, during "one continuous transaction."

**[8]** The Court's decision in *Yount* does not mean that our holding in *Smith* was wrong. But it does mean that our understanding of § 148(a)(1) was wrong. Section 148(a)(1) does not require that an officer's lawful and unlawful behavior be divisible into two discrete "phases," or time periods, as we believed when we decided *Smith*. It is sufficient for a valid conviction under § 148(a)(1) that at some time during a "continuous transaction" an individual resisted, delayed, or obstructed an officer when the officer was acting lawfully. It does not matter that the officer might also, at some other time during that same "continuous transaction," have acted unlawfully.

**[9]** We are, of course, bound by the California Supreme Court's interpretation of California law. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009). We therefore apply *Heck* to § 148(a)(1) as the California Supreme Court interpreted it in *Yount*.

### 3.    Application of *Heck*

**[10]** The question before us is the basic *Heck* question — whether success in Hooper's § 1983 claim that excessive force was used during her arrest "would 'necessarily imply'

or 'demonstrate' the invalidity" of her conviction under § 148(a)(1). *Smith*, 394 F.3d at 695. Given California law, as clarified by *Yount*, we hold that it would not. The chain of events constituting Hooper's arrest was, in the words of the Court in *Yount*, "one continuous transaction." A holding in Hooper's § 1983 case that the use of the dog was excessive force would not "negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of [Hooper's] attempt to resist it [when she jerked her hand away from Deputy Terrell]." *Yount*, 43 Cal. 4th at 899 (quoting *Jones*, 197 F. Supp. 2d at 1005 n.9).

The California Supreme Court in *Yount* did not reach the question how it would apply *Heck* to a § 148(a)(1) case where non-deadly force was used. *Yount*, 43 Cal.4th at 899 n.1. But the Court's failure to reach that question does not matter here. While we are bound by that Court's interpretation of § 148(a)(1), the application of the *Heck* bar in an excessive force case under the Fourth Amendment is a question of federal law that we decide for ourselves.

**[11]** The line between excessive and reasonable force under the Fourth Amendment is not the line between deadly and non-deadly force. The United States Supreme Court held in *Graham v. Connor*, 490 U.S. 386, 397 (1989), that the test for whether force is reasonable or excessive is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." The Court did not create a separate test for deadly force in *Graham*. Rather, "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Id.* at 395 (emphasis in original). In *Scott v. Harris*, 550 U.S. 372 (2007), the Court reiterated the point that deadly force cases do not constitute a special category. "[There is no] magical on/off switch that triggers rigid pre-

conditions whenever an officer's actions constitute 'deadly force.' . . . Whether or not Scott's actions constituted application of 'deadly force,' all that matters is whether Scott's actions were reasonable." *Id.* at 382-83.

In so holding, we agree with many of our sister circuits in similar cases. For example, in *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006), the Seventh Circuit noted that a plaintiff alleging excessive force "does not collaterally attack his conviction [or] deny that he resisted. . . . Rather, [plaintiff] claims that he suffered unnecessary injuries because [the] response to his resistance . . . was not . . . objectively reasonable." *See also Martinez v. City of Alburquerque*, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue him."); *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008); *Hadley v. Gutierrez*, 526 F.3d 1324 (11th Cir. 2008); *Dyer v. Lee*, 488 F.3d 876 (11th Cir. 2007); *Thore v. Howe*, 466 F.3d 173 (1st Cir. 2006); *Nelson v. Jashurek*, 109 F.3d 142, 145-46 (3d Cir. 1997) (permitting an excessive force claim when plaintiff alleged that the officer "effectuated a lawful arrest in an unlawful manner"). *But see Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005) (holding that excessive force claims are *Heck* barred by a conviction for misdemeanor assault on an officer during the arrest incident).

To the extent the state law under which a conviction is obtained differs, the answer to the *Heck* question could also differ. Nonetheless, the decisions of our sister circuits are instructive, for many state statutes that criminalize resisting lawful arrest and other lawful police conduct are very similar. It is thus not surprising that most of the circuit courts that have addressed the *Heck* bar in cases involving such statutes should have given the same answer, and that we, in turn, agree with that answer.

**[12]** In sum, we conclude that a conviction under California Penal Code § 148(a)(1) does not bar a § 1983 claim for

excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during "one continuous transaction." In the case now before us, we hold that Hooper's § 1983 excessive force claim is not *Heck*-barred based on her conviction under § 148(a)(1).

## B.   Hooper's Claims under State Law

In addition to her § 1983 claim, Hooper also alleges that the use of the dog constituted excessive force under the California Constitution and California Civil Code § 52.1(b). The California Supreme Court has not distinguished between the application of *Heck* to § 1983 claims and the application of analogous California law to state-law claims. *See Yount*, 43 Cal.4th at 902 (noting "that *Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions" and applying its § 1983 *Heck* analysis to a state-law battery claim). The district court held that the California-law analogue to *Heck* bars Hooper's state-law claims for excessive force.

**[13]** We vacate the decision of the district court on Hooper's state-law claims and remand for reconsideration in light of this opinion. We recognize, in light of the fact that the California Supreme Court did not reach the question of non-deadly force in *Yount*, the possibility that California law may differ from *Heck*. On remand, the district court will have an opportunity to decide whether the application of California-law analogues to *Heck* differs from our application of *Heck* itself. That question has not been addressed below, and we believe it is better answered in the first instance by the district court.

## C.   Defendant Sheriff Kolender

**[14]** We affirm the district court's grant of summary judgment on Hooper's claims against Sheriff Kolender in his individual capacity for the reasons given by the district court.

## Conclusion

**[15]** We hold that Hooper's § 1983 excessive force claim against all of the defendants except Sheriff Kolender should not have been dismissed on summary judgment as barred by *Heck*. We reverse the district court's grant of summary judgment to those defendants on Hooper's § 1983 claim. We vacate the district court's grant of summary judgment on Hooper's state-law claims and remand for reconsideration in light of *Yount* and our opinion in this case. Finally, we affirm the district court's grant of summary judgment to Sheriff Kolender.

REVERSED in part, AFFIRMED in part, VACATED in part, and REMANDED for further proceedings. Costs on appeal to appellant Hooper.