Filed 8/13/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ANDREW KEVIN WILLIAMS,<br><br>  Defendant and Appellant. | H044771<br>(Santa Cruz County<br> Super. Ct. Nos. 16CR00388,<br> 16AP00012) |

A defendant violates Penal Code section 148, subdivision (a)(1)[1] (hereafter section 148(a)(1)) if he or she delays, obstructs, or resists a police officer who is engaged in the lawful performance of his or her duties. But when an officer uses excessive force in making an arrest or a detention, the officer is not engaged in the lawful performance of his or her duties.

The issue presented in this case is whether a defendant may be convicted of violating section 148(a)(1) if the officer uses excessive force after the completed offense of delaying, obstructing, or resisting an officer who is engaged in the lawful performance of his or her duties. We hold that if a defendant delays, obstructs, or resists an officer who is engaged in the lawful performance of his or her duties, the defendant may be convicted of violating section 148(a)(1) even if the officer uses excessive force subsequent to the completed violation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

In this case, defendant Andrew Kevin Williams was charged with delaying, obstructing, or resisting a police officer engaged in the lawful performance of his duties (§ 148(a)(1)). During deliberations, the jury asked the following question: "If a peace officer is correctly conducting duties, [¶] If a 148(a)[(1)] violation occurs, [¶] If then, subsequent to the violation, excessive force is used, does this invalidate the 148(a)[(1)] violation?" The trial court responded "NO" and the jury later found defendant guilty.

Defendant appealed to the appellate division of the Santa Cruz County Superior Court, which reversed defendant's conviction in a two-to-one decision. The appellate division majority found that the trial court erred in responding "NO" when the jury asked whether a violation of section 148(a)(1) is "invalidate[d]" if an officer uses excessive force "subsequent to the violation." The dissenting judge would have found no instructional error. The appellate division then certified the case for transfer to this court, and we ordered the case transferred to us for hearing and decision. (Cal. Rules of Court, rules 8.1002, 8.1008.)[2]

In this court, defendant reiterates his claim that the trial court erred by responding "NO" when the jury asked whether the use of excessive force "subsequent to" a violation of section 148(a)(1) "invalidate[s]" the violation. We conclude that the trial court did not err in responding to the jury question. If a defendant delays, obstructs, or resists a police officer who is engaged in the lawful performance of his or her duties, the defendant may be convicted of violating section 148(a)(1) even if the officer uses excessive force subsequent to the completed violation.

Defendant also contends the trial court erroneously instructed the jury that he could be convicted of violating section 148(a)(1) if the jury found that he stepped in front of an officer who was writing a citation, because there was no evidence that defendant

---

[2] All further rule references are to the California Rules of Court.

2

thereby delayed, obstructed, or resisted the officer. We conclude there was no instructional error. We will therefore affirm the judgment.

## I.   FACTUAL BACKGROUND

On January 19, 2016, at about 9:40 p.m., Santa Cruz Police Officer Jeffrey Brouillette was working with Field Training Officer Jeff Auldridge in downtown Santa Cruz. They saw a group of people on Pacific Avenue. One person, William Sanders, had a dog, which was a violation of the Municipal Code. A second person, Keenan Johnson, was smoking and playing amplified music, both of which were violations of the Municipal Code. Defendant, who was part of the group, was laying down on the sidewalk.

The officers intended to give a warning to Sanders, cite Johnson for the amplified music, and tell the rest of the group to "clear out." When the officers approached the group, Johnson and defendant indicated they were upset about the fact that Johnson was getting a ticket. Defendant called Officer Brouillette a "pig."

As Officer Brouillette began writing a citation to Johnson, a pedestrian tried to walk by. Officer Auldridge instructed the pedestrian not to walk in between Officer Brouillette and Johnson. The pedestrian complied but made a comment indicating he "wasn't happy about it." At that point, Officer David Gunter had arrived.

After the pedestrian passed by, defendant got up and stood in between Officer Brouillette and Johnson. Defendant smiled and then stared at the officer while keeping one hand in his coat pocket. Officer Brouillette became concerned for his safety. The officers asked defendant to sit down, but defendant remained in the same stance. The officers "directed" defendant to sit down, explaining that he was interfering with Officer Brouillette's ability to write the ticket. Defendant again ignored the officers. The officers then told defendant "that he was being detained and that he was going to be getting a ticket for lying on the sidewalk." Defendant remained standing.

3

The officers instructed defendant to sit down and gave defendant two warnings about being arrested for resisting, obstructing, or delaying an officer. Defendant ignored the officers. Officer Audridge pushed defendant backwards, away from Officer Brouillette. Officer Auldridge told Officer Brouillette to arrest defendant. Officer Audridge took hold of defendant's right arm while Officer Brouillette attempted to arrest defendant, who kept his left hand in his pocket when Officer Brouillette tried to put him into handcuffs.

After about a minute of trying to get defendant's left hand out of his pocket and into handcuffs, the officers decided they needed to "take him on the ground." The officers tried to do an "armbar takedown," but defendant "braced his stance." Officer Brouillette then grabbed the back of defendant's coat and pulled him down to the ground.

Although he was down on the ground, defendant still had his hand in his pocket, so the officers held his arms and legs in place while they waited for backup. Defendant rocked his body from side to side, "trying to break free." Officer Brouillette used his body weight to keep defendant on the ground, and Officer Auldridge used his thumb to put "a pressure point" behind defendant's jaw. When Officer Gunter saw defendant kicking, he went over and restrained defendant's legs. Meanwhile, other members of defendant's group were yelling at the officers.

Officer Brouillette still could not get defendant's hand out of the coat pocket, so Officer Auldridge twisted defendant's wrist. When that did not result in defendant's compliance, Officer Auldridge punched defendant in the face a few times as hard as he could, but not "very hard." The punching was not effective, however, so Officer Auldridge put his knee on defendant's face.

After a few minutes, more officers arrived, including Officer Matthew Montes and Sergeant William Clayton. The officers were able to pull defendant's hand out from his coat pocket and place defendant in handcuffs. The officers rolled defendant "up to a seating position." Officer Montes tried to pat search defendant and reach into

4

defendant's coat pocket, but defendant—who was now standing—moved his body so that the officer could not do so.

The officers put defendant into a patrol car, but he "lowered his center of gravity" and leaned back. The officers made several attempts to put defendant into the patrol car, but realized they could not do so "safely without hurting him or hurting [the officers]." The officers were particularly concerned about defendant kicking them. They therefore decided to restrain defendant with shackles.

In order to place the shackles on defendant, the officers decided to "put him back on the ground." Defendant was "wiggling," and Officer Brouillette placed his knee on defendant's back to keep defendant from getting up. Defendant continued to move and kick, which made it difficult for the officers to put the shackles on.

The officers finally managed to place shackles on defendant's ankles but decided to also place him in a wrap to further restrain him. Defendant was transported to the hospital in order to "get him cleared" before taking him to jail. At the hospital, defendant started "to make a loogie," so the officers put a spit mask on him. Defendant was able to get the spit mask off, so the officers put another one on him. The officers tried to take defendant to jail, but the jail would not accept him in the wrap. The officers put shackles on defendant's feet and took defendant out of the wrap so the jail would accept him.

Officer Brouillette identified the ways in which he believed defendant delayed and obstructed the performance of his duties: (1) when defendant stood in between Officer Brouillette and Johnson; (2) when defendant refused to sit down, causing Officer Brouillette's attention to remain on defendant instead of on writing Johnson's citation; (3) when defendant again refused to sit down; (4) when defendant refused to sit down for a third time; (5) when defendant had to be arrested, further delaying the Johnson citation.

Officer Brouillette identified the ways in which he believed defendant resisted him: (1) the first three times defendant refused to pull his hand out of his coat pocket; (2) the next two times defendant refused to pull his hand out of his coat pocket, when he

5

was on the ground; (3) when defendant refused to get into the patrol car; (4) when defendant resisted the shackles.

According to Officer Auldridge, the obstructing and delaying began when defendant got up and stood in front of Officer Brouillette, and "it never stopped." Officer Gunter likewise believed that defendant was resisting from the time of the initial verbal commands until the time he was placed in the wrap device. According to Officer Montes, defendant resisted, obstructed, and delayed him when he was attempting the pat search and at the hospital.

## II. PROCEDURAL BACKGROUND

### A. *Charges*

A second amended complaint alleged that defendant resisted, delayed, and obstructed "either" Officers Auldridge, Brouillett, Gunter, or Montes in violation of section 148(a)(1).[3]

### B. *Jury Instructions*

#### 1. Instruction on Section 148(a)

Pursuant to CALCRIM No. 2656, the jury was instructed: "The Defendant is charged with resisting, obstructing, or delaying a peace officer in the performance or attempted performance of his duties, in violation of Penal Code [section ]148[(a)(1)].

"To prove that the Defendant is guilty of this crime, the People must prove that, one, Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette were peace officers lawfully performing or attempting to perform their duties as peace officers. [Two, t]he Defendant willfully resisted, obstructed, or delayed Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette in the performance or attempted performance of those duties. And three, when the Defendant acted, he knew or reasonably should have known, that Jeff

---

[3] The second amended complaint referred to a violation of section 148(a), but the offense of resisting, delaying, or obstructing an officer is a violation of section 148(a)(1). (See Stats. 1997, ch. 464, § 1.)

6

Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette were peace officers performing or attempting to perform their duties.

"If someone commits an act willfully, when he or she does it willingly or on purpose, it is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

"A person who is employed as a police officer by the Santa Cruz Police Department is a peace officer. A peace officer is not lawfully performing his or her duties, if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties.

"Jury Instruction [2670], which follows, explain[s] when an arrest or detention is unlawful or when force is unreasonable or excessive. The People allege that the Defendant resisted, obstructed, or delayed Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette by doing the following.

"Jeffrey Brou[i]llette. Stepping in front of Brou[i]llette while he was writing a citation. Stiffening his body while being placed under arrest. Not removing his hand from his pocket while being placed under arrest. Stiffening his body while Brou[i]llette attempted to place him on the ground. Not responding to commands to stop resisting. Not responding to commands to give Brou[i]llette his hand. Stiffening and moving his body on the ground while being placed under arrest. Kicking his legs while on the ground while being placed under arrest. Making his body limp while attempting to be placed in the back of the patrol vehicle. Making his body stiff while attempting to be placed in the back of the patrol vehicle.

"Jeff Auldridge. Not responding to commands to sit down. Not responding to commands to move back. Stiffening his body while being placed under arrest. Stiffening his body while Auldridge attempted to place him on the ground. Not responding to commands to stop resisting. Stiffening and moving his body on the ground while being

7

placed under arrest. Kicking his legs while on the ground, while being placed under arrest.

"Matthew Montes. Not responding to commands to spread his legs while attempting to be searched. Jumping up while attempting to be searched. Making his body limp while attempting to be placed in the back of the patrol vehicle. Making his body stiff while attempting to be placed in the back of the patrol vehicle. Preventing the spit mask from being placed on his head. Removing the spit mask from his head.

"You may not find the Defendant guilty unless you all agree that the People have proved that the Defendant committed at least one of the alleged acts of resisting, obstructing, or delaying a peace officer who was lawfully performing his or her duties, and you all agree on which act he committed. If a person intentionally goes limp, requiring an officer to drag or carry the person in order to accomplish a lawful arrest, that person may have willfully resisted, obstructed, or delayed the officer, if all the other requirements are met."

### 2.      Instruction on Lawful Performance

Pursuant to CALCRIM No. 2670, the jury was instructed: "The People have the burden of proving beyond a reasonable doubt that Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette were lawfully performing their duties as peace officers. If the People have not met this burden, you must find the Defendant not guilty of his charged crime.

"A peace officer is not lawfully performing his or her duties if he or she is unlawfully arresting or detaining someone or using unreasonable or excessive force in his or her duties. A peace officer may legally detain someone if, one, specific facts known are apparent to the officer, leave him or her to suspect that the person could be detained, has been or is about to be involved in activity relating to crime, and two, a reasonable officer who knew the same facts would have the same suspicion.

"Any other detention is unlawful. In deciding whether the detention was lawful, consider evidence of the officer's training, and experience, and all the circumstances

8

known by the officer when he or she detained the person. A peace officer may legally arrest someone if he or she has probable cause to make the arrest. Any other arrest is unlawful.

"Probable cause exists when the facts known to the arresting officer at the time of the arrest would persuade someone of reasonable caution, that the person to be arrested has committed a crime. In deciding whether the arrest was lawful, consider evidence of the officer's training and experience, and all the circumstances known by the officer when he or she arrested the person.

"In order for an officer to lawfully arrest someone without a warrant for a misdemeanor or infraction, the [officer] must have probable cause to believe that the person to be arrested committed a misdemeanor [or] infraction in the officer's presence. Penal Code [section ]148(a)[(1)] is a misdemeanor.

"Special rules control the use of force. A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense. If a peace officer uses unreasonable and excessive force while arresting or attempting to arrest . . . or detain[ing] or attempting to detain a person, that person may lawfully use reasonable force to defend himself or herself.

"A person being arrested uses reasonable force when he or she, one, uses that degree of force that he or she actually believes is reasonably necessary to protect himself or herself from the officer's use of unreasonable or excessive force, and two, uses no more force than a reasonable person in the same situation would believe is necessary for his or her protection."

### 3. Instruction on Unanimity

The jury was instructed on unanimity pursuant to CALCRIM No. 3500 as follows: "The Defendant is charged with Penal Code [section ]148, resisting, obstructing, or delaying a peace officer. The People have presented evidence of more than one act to prove that the Defendant committed this offense. You must not find the Defendant guilty

9

unless you all agree that the People have proved that the Defendant committed at least one of these acts, and you all agree on which act he committed."

### C.     Trial

The defense did not put on any affirmative evidence.

During argument to the jury, the prosecutor asserted that "the reason we're here" was defendant's initial violation of section 148(a)(1), which occurred when he got in between Officer Brouilette and Johnson and then refused to move after being threatened with arrest. The prosecutor argued that defendant had been "delaying and obstructing" the officer, who was "lawfully" writing a citation. The prosecutor argued, "Right there, he's guilty of 148. You don't even have to go any further. He obstructed and delayed." The prosecutor also argued that defendant obstructed, delayed, and resisted the officers throughout the rest of the encounter.

Defendant's trial counsel argued that the officers used excessive force and thus were not lawfully attempting to execute their duties. She noted that defendant was being arrested for an infraction and argued that the officers' use of force became "disproportionate" when defendant was "punched, kneed on, poked, wrapped, bag over the head . . . ." She argued that even if the jury found that defendant "did one of the acts on this list," he should be found not guilty because the officers' actions were unlawful.

In closing argument, the prosecutor asserted that the officers only used force after defendant had committed "several violations" of section 148(a)(1) and that the force was not excessive "given the circumstances." The prosecutor suggested that the jury "break it down into events" and argued that there were "multiple avenues to find the defendant guilty."

### D.     Jury Question and Trial Court's Response

During deliberations, the jury submitted the following question: "If a peace officer is correctly conducting duties, [¶] If a 148(a)[(1)] violation occurs, [¶] If then,

10

subsequent to the violation, excessive force is used, does this <u>invalidate</u> the 148(a)[(1)] violation?"

The parties discussed an appropriate response to the jury's question. The prosecutor argued that the officers' use of excessive force would not "negate any sort of resisting prior to the use of excessive force." He argued that the law did not permit an individual to "hit officers" and have that conduct "negate[d]" if the officers subsequently used excessive force.

Defendant's trial counsel argued that "any arrest made with excessive force is equally unlawful" even if the officers originally had probable cause to arrest the person.

Citing *Yount v. City of Sacramento* (2008) 43 Cal.4th 885 (*Yount*), the trial court determined that due to "temporal breaks" in the incident, the answer to the jury's question—whether the use of excessive force "subsequent to" a violation of section 148(a)(1) "invalidate[s]" the violation—was "no." The jury was given "NO" as the response to its question.

### E.     Verdict and Sentence

The jury found defendant guilty of violating section 148(a)(1). The trial court suspended imposition of sentence and placed defendant on probation for 24 months, with an order that he spend four days in county jail, with credit for time served.

### F.     Appellate Division Proceedings

Defendant appealed to the appellate division of the Santa Cruz County Superior Court. Defendant argued that the trial court had responded to the jury's question incorrectly.

In a two-to-one decision, the appellate division reversed defendant's conviction. The majority cited *People v. White* (1980) 101 Cal.App.3d 161 (*White*) for the proposition that "if a defendant is charged with violating Penal Code [section] 148 by resisting arrest and the arrest is found to be unlawful because it was made with excessive force, a defendant cannot be convicted of that section." The majority rejected the idea

11

that "a resisting arrest event" may be divided into parts and concluded that the trial court's response to the jury question was erroneous. The majority found the error prejudicial because the jury might have "found that the officer went too far," negating the lawful performance element of the offense.

The dissenting judge would have found no instructional error. The dissent found language in *Yount*, *supra*, 43 Cal.4th 885 to be controlling. In particular, the dissent found significant the *Yount* court's observation that if a defendant resists a lawful arrest, an officer's " 'subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it.' " (*Id*. at p. 899.) The dissent would have held that "during a single bad police encounter," "a defendant can be both a perpetrator of a section 148 crime and an injured victim of an unlawful arrest."

The appellate division certified the case for transfer to this court, and we ordered that the case be transferred to us for hearing and decision. (Rules 8.1002, 8.1008.)

## III.   DISCUSSION

Defendant asserts that if a police officer uses excessive force during an "evolving event," such excessive force invalidates a violation of section 148(a)(1), even if the excessive force occurs subsequent to the defendant's completed act of resisting, obstructing, or delaying the officer. He contends the trial court erred by responding "NO" when the jury asked whether the use of excessive force "subsequent to" a violation of section 148(a)(1) "invalidate[s]" the violation.

Defendant also contends the trial court erroneously instructed the jury that he could be convicted of violating section 148(a)(1) if the jury found that he stepped in front of an officer who was writing a citation.

### A.     *Standard of Review*

The issues in this case are (1) whether the trial court correctly responded to the jury question about whether the use of excessive force "subsequent to" a violation of

12

section 148(a)(1) "invalidate[s]" the violation and (2) whether the trial court properly instructed the jury on the acts that could constitute a violation of section 148(a)(1). Because both issues involve questions of law, we apply the independent or de novo standard of review. (See *People v. Posey* (2004) 32 Cal.4th 193, 218.)

### B. Use of Excessive Force After a Violation of Section 148(a)

Section 148(a)(1) provides that a "person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor.

Although not explicit in the statute, "[t]he lawfulness of the officer's conduct is an *essential element* of the offense of resisting, delaying, or obstructing a peace officer. [Citation.]" (*In re Chase C.* (2015) 243 Cal.App.4th 107, 115.) "[A] defendant cannot be convicted of an offense against a peace officer ' "*engaged in . . . the performance of . . .* [his or her] *duties*" ' unless the officer was acting lawfully at the time the offense against the officer was committed. [Citations.]" (*In re Manuel G.* (1997) 16 Cal.4th 805, 815 (*Manuel G.*).)

Defendant relies on *White*, *supra*, 101 Cal.App.3d 161 in asserting that the use of excessive force at any point during an encounter invalidates a violation of section 148(a)(1). *White,* however, discussed only the requirement that a jury be instructed that the use of excessive force during an arrest invalidates that arrest. *White* did not address whether a defendant may be convicted of violating section 148(a)(1) if he or she obstructs, delays, or resists an officer who is lawfully performing his or her duties, and the officer subsequently uses excessive force in arresting the defendant for the completed section 148(a)(1) violation.

As in this case, the *White* defendant engaged in various acts that could be deemed violations of section 148(a)(1). The defendant shoved a police officer who was arresting the defendant's companion. (*White*, *supra*, 101 Cal.App.3d at p. 165.) The defendant

13

refused to comply with the officer's commands to "stand back and stay out of the way." (*Ibid*.) When other officers attempted to arrest the defendant, she physically resisted by swinging her arms and kicking her feet. She later jumped out of a police car and resisted when an officer tried to put her back into the car by grabbing her and placing a "carotid restraint ('sleeper' hold) on her." (*Ibid*.)

The jury instructions in *White* failed to tell the jurors "that if they found the arrest was made with excessive force, the arrest was unlawful." (*White*, *supra*, 101 Cal.App.3d at p. 167.) This was error: "The instructions should have included the explanation that where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties [citations]." (*Id*. at p. 164.) The *White* court also found two other instructional errors: the trial court had erred by failing to give a self-defense instruction, and by failing to instruct that the duty not to resist arrest does not apply to a charge of section 148. (*White*, *supra*, at p. 168.) The appellate court found that the instructional errors were not cured by other instructions. (*Id*. at pp. 169-170.)

*White* held that "where excessive force is used in making what otherwise is a technically lawful arrest, the arrest becomes unlawful and a defendant may not be convicted of an offense which requires the officer to be engaged in the performance of his duties [citations]." (*White*, *supra*, 101 Cal.App.3d at p. 164.) As defendant reads *White,* a defendant cannot be convicted of violating section 148(a)(1) if excessive force is used *at any time* during an "evolving event."

Although the defendant in *White* engaged in conduct that could have been the basis for a section 148(a)(1) conviction prior to the officer's use of excessive force, the court did not consider whether the defendant's conviction could have been based on the pre-arrest conduct. Thus, that case is of little assistance to resolving the question presented here, where the jury's question indicated it found a completed violation of

14

section 148(a)(1) prior to the officers' use of excessive force. The instructional error in *White* was the trial court's complete failure to instruct the jury that an officer is not engaged in the performance of his or her duties if he or she makes an arrest with excessive force. The *White* court did not consider whether the defendant could have been convicted of violating section 148(a)(1) if the jury found that a completed violation preceded any use of excessive force. " ' "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered." ' [Citations.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 154-155.)

Defendant also relies on *People v. Olguin* (1981) 119 Cal.App.3d 39 (*Olguin*), but that case also did not consider the question of whether a defendant can be validly convicted of violating section 148(a)(1) if excessive force is used subsequent to a completed offense. Moreover, *Olguin* is factually distinguishable from the instant case.

In *Olguin,* prosecution witnesses testified that the defendant and his relatives were being disruptive and harassing patrons in a bar. The defendant left the bar at the request of police officers, but outside of the bar the defendant threatened one of the officers. The officers arrested the defendant, who "was struggling much of the time," and they transported him to the police department, where the defendant kicked, head-butted, and struggled with the officers. (*Olguin*, *supra*, 119 Cal.App.3d at p. 42.) The defendant, however, testified that the officers arrested him without incident and then took him to "a dark spot" behind the police department, where they indicated they were going to beat him up. (*Id*. at p. 43.) The defendant claimed he refused to get out of the police car, but the officers dragged him out and beat him up.

The jury instructions in *Olguin*, like those in *White,* completely failed to inform the jury that "excessive force by a police officer renders unlawful an otherwise lawful arrest in that excessive force is not within the performance of the officer's duty." (*Olguin*, *supra*, 119 Cal.App.3d at p. 44.) The jury instructions on lawful police conduct

15

were only "related to probable cause for making the arrest and the proper procedures used in making the arrest." (*Ibid.*)  The instructions should have informed the jury "that an officer is acting unlawfully and not in the discharge of his duties when he uses excessive or unreasonable force" and that the defendant could not be convicted of violating section 148(a)(1) "if the officer used excessive or unreasonable force, thus placing the officer outside the performance of his duties." (*Olguin*, *supra*, at p. 46.)  The instructional error was prejudicial because the evidence "would have supported a finding that the officers used excessive force and thus that they were not acting within the scope of their duties" and the appellate court could not "say that it was shown that the 'factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions.' [Citation.]" (*Ibid.*)

Contrary to defendant's claim, the *Olguin* court did not address "the issue of pre and post excessive force separately." *Olguin* held only that the jury should have been instructed that the use of excessive force is outside the scope of an officer's lawful duties, and that the error was prejudicial because no other instruction asked the jury to determine whether the officers had used excessive force.  Thus, the *Olguin* case also is not authority for the proposition that a defendant cannot be convicted of violating section 148(a)(1) if an officer uses any excessive force *at any time*, including after a completed violation of section 148(a)(1), since that proposition was not "actually considered and decided" by the *Olguin* court.  (*In re Chavez* (2003) 30 Cal.4th 643, 656; see *ibid*. ["a case is authority only for a proposition actually considered and decided therein"].)

Defendant contends that the trial court erroneously relied on dicta from *Yount*, *supra*, 43 Cal.4th 885 in responding to the jury question.  The Attorney General contends that *Yount* supports the trial court's response and should be followed.

The plaintiff in *Yount* had been the defendant in a criminal case that resulted in him pleading no contest to a violation of section 148(a)(1).  (*Yount*, *supra*, 43 Cal.4th at p. 891.)  After being placed into a police car, Yount banged his head and kicked inside

16

the car. He refused to provide identification to the police and continued kicking even after being warned that the police would use a Taser. (*Id*. at p. 890.) An officer did use a Taser, but Yount only "became more violent." (*Ibid*.) As officers pulled Yount out of the police car, Yount kicked one of the officers. He continued resisting even after three officers restrained him. (*Id*. at pp. 890-891.) An officer decided to use a Taser again, but "mistakenly grabbed his pistol" and shot Yount in the buttocks. (*Id*. at p. 891.)

After his criminal case resolved, Yount sued the officer who had shot him, as well as the City of Sacramento, for damages under both state and federal law. (*Yount*, *supra*, 43 Cal.4th at p. 891.) Yount alleged that the officer had used excessive force by shooting him at a time when he was not attempting to interfere with the officers.

The *Yount* defendants alleged that Yount's federal and state law claims were barred by *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*) and *Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401 (*Susag*). *Heck* held that when a plaintiff files a lawsuit under 42 U.S.C. section 1983 (hereafter section 1983) to recover damages for an allegedly unconstitutional conviction, the lawsuit must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless the conviction has already been invalidated. (*Heck*, *supra*, at p. 487.) *Susag* applied a similar rule to state law claims. (*Susag*, *supra*, at pp. 1406, 1413.)

The *Yount* defendants argued that Yount's federal and state law claims had to be dismissed because Yount's section 148(a)(1) conviction had not been invalidated and a judgment in his favor would impliedly render that conviction invalid. Yount argued that because his section 148(a)(1) conviction encompassed multiple acts of resistance, his damages claims would not necessarily invalidate that conviction. (*Yount*, *supra*, 43 Cal.4th at p. 888.)

The *Yount* court declined to hold that Yount could proceed with his claims simply because the evidence showed " 'at least one violation of [Penal Code] section 148 independent of and discrete from an officer's alleged misconduct.' " (*Yount*, *supra*, 43

17

Cal.4th at p. 896.) The court explained that such a rule would lead to inconsistent judgments and would reward criminal defendants "who engage in multiple acts of resistance." (*Id*. at p. 897.) Nevertheless, the *Yount* court found that Yount's claims were not totally barred. While Yount was barred from pursuing a claim that the officers were unjustified in using "*any* force," Yount *could* pursue his claim with respect to the officer's use of *deadly* force, because that would not imply that the section 148(a)(1) violation was invalid. (*Yount*, *supra*, at p. 899.) Since Yount did not "deny that he resisted the officers (or that the officers had the right to respond with reasonable force), he pose[d] no challenge to his conviction" by challenging the officers' use of *deadly* force. (*Id*. at p. 900.)

In explaining why the officers' use of deadly force required a separate analysis from the claim of excessive force, the *Yount* court acknowledged that " 'two isolated factual contexts' " could exist within " 'one continuous chain of events.' " (*Yount*, *supra*, 43 Cal.4th at p. 899.) The court indicated that in such a case, it would be appropriate to examine the timing of an officer's excessive force in determining whether a claim was barred by *Heck*: " 'For example, a defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it.' " (*Yount*, *supra*, at p. 899.)

Defendant characterizes as dicta the *Yount* court's comments about how an officer's "subsequent use of excessive force" does not necessarily negate a section 148(a)(1) violation. (*Yount*, *supra*, 43 Cal.4th at p. 899.) We agree that the comments were "unnecessary to the decision" and thus dicta. (See *id*. at p. 903 (conc. opn. of Werdegar, J.).) Dicta from the California Supreme Court, however, "are highly persuasive. [Citation.]" (*People v. Wade* (1996) 48 Cal.App.4th 460, 467.) And "[w]hen the Supreme Court has conducted a thorough analysis of the issues and such

18

analysis reflects compelling logic, its dictum should be followed. [Citation.]" (*Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 (*Hubbard*).)

In our view, the dicta from *Yount* does reflect "compelling logic." (*Hubbard*, *supra*, 66 Cal.App.4th at p. 1169.) Our Supreme Court has emphasized that the validity of a conviction of an offense involving a peace officer engaged in the performance of his or her duties depends on whether "the officer was acting lawfully *at the time* the offense against the officer was committed. [Citations.]" (*Manuel G.*, *supra*, 16 Cal.4th at p. 815, italics added.) If a jury finds that an officer is acting lawfully at the time a defendant resists, obstructs, or delays that officer, there is no bar to the defendant's conviction of section 148(a)(1), even if an officer subsequently uses excessive force on the defendant.[4]

We agree with the Attorney General that the rule proposed by defendant "could lead to absurd results." A defendant who has resisted, obstructed, or delayed an officer who is lawfully performing his or her duties would have an inducement to escalate his or her conduct in hopes that an officer will respond excessively and thereby render the arrest unlawful. Logically, the use of excessive force after a defendant's completed section 148(a)(1) offense should not provide a basis for finding the defendant did not violate section 148(a)(1).

Our conclusion is consistent with several federal cases finding that *Heck* did not bar a plaintiff's claims because the evidence showed that excessive force was used subsequent to the completion of the section 148(a)(1) offense. For instance, in *Sanford v. Motts* (9th Cir. 2001) 258 F.3d 1117 (*Sanford*), the plaintiff (Sanford) was arrested for assault on an animal control officer. When Sanford then complained that the officers were kicking her boyfriend, an officer punched her in the face. Sanford pleaded no

---

[4] As indicated in *Yount*, however, an officer's use of excessive force subsequent to a completed section 148(a)(1) offense *could* provide a basis for defendant's claim under federal or state law, if the defendant can show that the claim would not necessarily invalidate the section 148(a)(1) conviction. (See *Yount*, *supra*, 43 Cal.4th at p. 899.)

19

contest to a violation of section 148(a)(1), but she then brought a section 1983 claim against the officer and the city. The court rejected the defendants' claims that *Heck* applied to bar Sanford's claim, explaining: "Excessive force used after an arrest is made does not destroy the lawfulness of the arrest. Sanford's conviction required that [the officer] be acting lawfully in the performance of his duties 'at the time the offense against him was committed.' [Citation.] Hence, if [the officer] used excessive force subsequent to the time Sanford interfered with his duty, success in her section 1983 claim will not invalidate her conviction." (*Sanford*, *supra*, at p. 1120.)

The plaintiff's section 1983 claim was also not barred in *Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689 (*Smith*), because Smith's conviction of violating section 148(a)(1) could have been based on his pre-arrest conduct. In that case, the police arrived at Smith's house to investigate a domestic violence report. Smith was outside, with his hands in his pockets. An officer twice instructed Smith to remove his hands from his pockets, but Smith refused. (*Smith*, *supra*, at p. 693.) Smith complied with the third instruction to remove his hands, but he twice refused to follow an officer's order to put his hands on his head and walk towards the officer. (*Id*. at pp. 693-694.) At that point, an officer sprayed Smith with pepper spray, and other officers grabbed him, slammed him into a door, and threw him down. An officer then ordered a canine to attack Smith. The canine ultimately bit Smith multiple times and Smith was pepper-sprayed several more times. (*Id*. at p. 694.)

After pleading guilty to violating section 148(a)(1), Smith filed a complaint under section 1983, alleging the officers had used excessive force. (*Smith*, *supra*, 394 F.3d at p. 694.) The defendants claimed that *Heck* barred the claim because success on the section 1983 claim would necessarily invalidate the section 148(a)(1) conviction. The Ninth Circuit disagreed, emphasizing that section 148(a)(1) requires an officer to be lawfully performing his or her duties at the time of the violation. The Ninth Circuit noted that an officer who uses excessive force at the time of an arrest would not be

lawfully performing his or her duties with respect to the arrest, but that " 'the time of the arrest' does not include previous stages of law enforcement activities that might or might not lead to an arrest, such as conducting an investigation." (*Smith*, *supra*, at p. 696.) Thus, "[a] conviction based on conduct that occurred *before* the officers commence the process of arresting the defendant is not 'necessarily' rendered invalid by the officers' subsequent use of excessive force in making the arrest." (*Ibid*.)

Turning to the facts of the case, the *Smith* court noted that some of Smith's "acts of willful resistance, delay, or obstruction occurred prior to the time that the officers had determined to arrest him for any criminal conduct" and that those acts "occurred in the course of the officers' *lawful* performance of their duty." (*Smith*, *supra*, 394 F.3d at p. 696.) Although Smith had also violated section 148(a)(1) "during the course of the officers' efforts to arrest him," his conviction was not necessarily based on that conduct and would not be invalidated by success on his section 1983 claim. (*Smith*, *supra*, at p. 697.)

In a post-*Yount* case, the Ninth Circuit similarly concluded "that a conviction under California Penal Code [section] 148(a)(1) does not bar a [section] 1983 claim for excessive force under *Heck* when the conviction and the [section] 1983 claim are based on different actions during 'one continuous transaction.' " (*Hooper v. County of San Diego* (9th Cir. 2011) 629 F.3d 1127, 1134 (*Hooper*).) In *Hooper,* the defendant struggled with an officer as he tried to arrest her, but she stopped struggling after the officer got on top of her. The officer then called for his dog, who bit the defendant's head, causing serious injury. The defendant pleaded guilty to violating section 148(a)(1) but sued the officer for damages, claiming excessive force. (*Hooper*, *supra*, at p. 1129.) The Ninth Circuit held that the excessive force claim was not barred by *Heck* because the use of the dog was excessive force that "would not 'negate the lawfulness of the initial arrest attempt' " nor negate the unlawfulness of Hooper's attempt to resist that arrest attempt. (*Hooper*, *supra*, at p. 1133.)

21

*Sanford, Smith,* and *Hooper* support our holding. Here, as in those cases, the jury could have found that defendant committed a violation of section 148(a)(1) because defendant resisted, obstructed, or delayed an officer who was acting in the lawful performance of his duties "at the time." (See *Manuel G.*, *supra*, 16 Cal.4th at p. 815.) For instance, the jury could have found a completed violation of section 148(a)(1) based on defendant's resisting, delaying and obstructing the officers when they were trying to write a citation to Johnson. The jury could also have found that an officer used excessive force when arresting defendant, subsequent to the completed section 148(a)(1) violation. The use of excessive force after the completed section 148(a)(1) violation would not invalidate the completed section 148(a)(1) violation.

In sum, the trial court's response to the jury question was correct. "NO," was the proper response when the jury asked, "If a peace officer is correctly conducting duties, [¶] If a 148(a)[(1)] violation occurs, [¶] If then, subsequent to the violation, excessive force is used, does this <u>invalidate</u> the 148(a)[(1)] violation?" If a peace officer is "correctly conducting duties" at the time a defendant violates section 148(a)(1) and "subsequent to the violation, excessive force is used," the section 148(a)(1) violation is *not* invalidated.

### C.    *Instruction on Acts Violating Section 148(a)*

Defendant contends the trial court erroneously instructed the jury that he could be convicted of violating section 148(a)(1) if the jury found that he stepped in front of an officer who was writing a citation. He contends that, as a matter of law, his act of stepping in front of Officer Brouilette did not violate section 148(a)(1) and thus "the jury was instructed on an invalid theory."[5]

---

[5] Defendant did not object to the instruction in the trial court, and he did not raise this issue in his appeal to the appellate division. The Attorney General does not argue (continued)

22

### 1. Instructions

In pertinent part, the jury was instructed on the elements of a section 148(a)(1) offense as follows: "To prove that the Defendant is guilty of this crime, the People must prove that, one, Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette were peace officers lawfully performing or attempting to perform their duties as peace officers. [Two, t]he Defendant willfully resisted, obstructed, or delayed Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette in the performance or attempted performance of those duties. And three, when the Defendant acted, he knew or reasonably should have known that Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette were peace officers performing or attempting to perform their duties. . . ."

The jury was further instructed that the prosecution had multiple theories about how defendant violated section 148(a)(1). The jury was told: "The People allege that the Defendant resisted, obstructed, or delayed Jeff Auldridge, or Matthew Montes, or Jeffrey Brou[i]llette by doing the following. [¶] Jeffrey Brou[i]llette. Stepping in front of Brou[i]llette while he was writing a citation. . . ."

The jury instructions also specified: "You may not find the Defendant guilty unless you all agree that the People have proved that the Defendant committed at least one of the alleged acts of resisting, obstructing, or delaying a peace officer who was lawfully performing his or her duties, and you all agree on which act he committed. . . ."

that defendant's failure to previously raise this issue should result in forfeiture. We recognize that "[t]rial courts have the duty to screen out invalid theories of conviction, either by appropriate instruction or by not presenting them to the jury in the first place." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1131 (*Guiton*).) We also recognize that we have the "power to review any matter and make orders and judgments as the appellate division of the superior court by statute would have in such case." (§ 1471; see rule 8.1012(e).) We will assume the issue is not forfeited, and we observe that our general transfer order did not limit the issues to be considered. (Cf. *Huntington Continental Townhouse Assn., Inc. v. Miner* (2014) 230 Cal.App.4th 590, 595, 607 [where matter was certified and transferred from the appellate division "to address a single question," the Court of Appeal declined to address other issues raised].)

### 2. Legal Principles

It is well-settled that reversal is required when " 'a particular theory of conviction . . . is contrary to law,' " i.e., the jury has been instructed on "a '*legally inadequate theory.*' " (*Guiton*, *supra*, 4 Cal.4th at p. 1128.) It is equally well-settled that "[i]f the inadequacy of proof is purely factual, of a kind the jury is fully equipped to detect, reversal is not required whenever a valid ground for the verdict remains, absent an affirmative indication in the record that the verdict actually did rest on the inadequate ground." (*Id*. at p. 1129.)

### 3. Analysis

Defendant asserts that the jury was erroneously told that his act of stepping in front of the officer who was writing a citation could constitute a violation of section 148(a)(1). He argues that as a matter of law, that act could not amount to "actual obstruction" of the officer because his act "did nothing to prevent the preparation of the citation." According to defendant, the evidence showed that Officer Brouillette stopped writing the citation only due to subjective concerns for officer safety, not because defendant did anything to prevent completion of the citation.

Defendant compares his act of standing between the officer and Johnson to the act of the defendant in *People v. Wetzel* (1974) 11 Cal.3d 104 (*Wetzel*). In *Wetzel,* officers asked the defendant for consent to enter her apartment to search for a burglary suspect. (*Id*. at p. 107.) The defendant refused: she stood in the doorway, blocking the officers from entering and insisting that the officers needed a warrant. She was ultimately convicted of violating section 148. On appeal, the defendant claimed "that her acts were nothing more than a passive assertion of a constitutional right and that such acts cannot form the basis for criminal conduct." (*Wetzel*, *supra*, at pp. 107-108.) The California Supreme Court agreed and reversed the section 148 conviction. The court noted that the officers had never actually attempted to make a warrantless entry into the home and that the defendant's "entire course of conduct was directed to refusal of consent, and nothing

more." (*Wetzel*, *supra*, at p. 109.) The court held that as a matter of law, a refusal to consent "cannot constitute grounds for a lawful arrest or subsequent search and seizure." (*Ibid*.)

*Wetzel* does not suggest the Fourth Amendment confers a right to refuse to obey reasonable police commands issued during lawful police conduct. Moreover, the instant case is distinguishable from *Wetzel*. Here, defendant was not asserting a constitutional right such as the right to refuse consent to a warrantless search. Defendant actively intervened between the officer and the person being cited, during the officer's lawful attempt to issue a citation.

Case law establishes that a defendant may properly be convicted of violating section 148(a)(1) based on acts that do not amount to " 'forcible interference with an officer's activities.' " (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329-1330 (*Muhammed C.*).) This court has upheld a section 148(a) violation, for instance, where a juvenile willfully delayed an officer's performance of duties by speaking to a detainee in a police car, after being ordered to stop. (*Muhammed C.*, *surpa*, at p. 1331.) This court explained that a trier of fact could reasonably find the juvenile "willfully delayed the officers' performance of duties by refusing the officers' repeated requests that he step away from the patrol car," since the officers had to interrupt their processing of the car to attend to the juvenile. (*Id*. at p. 1330.)

Here, defendant willfully stood in between an officer and Johnson, while the officer was writing a citation to Johnson, after the officers had instructed a pedestrian to go around the officer and Johnson. Defendant then ignored multiple requests and orders from the officers to sit down after they explained that defendant was interfering with the citation process. Defendant never complied with the officers' numerous orders. Rather, defendant distracted Officer Brouillette during the citation process, creating a reasonable concern for officer safety, and thereby delayed the officer in completing the citation process. A reasonable jury could find that this constituted a violation of

25

section 148(a)(1). Thus, the trial court did not err by telling the jury that "[s]tepping in front of Brou[i]llette while he was writing a citation" was a basis for finding that defendant committed an act of "resisting, obstructing, or delaying a peace officer who was lawfully performing his or her duties."

## IV.    DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, J.



WE CONCUR:




_____

GREENWOOD, P.J.




_____

GROVER, J.




*People v. Williams*
**H044819**

| | |
|---|---|
| Trial Court: | Santa Cruz County Superior Court<br>Superior Court Nos.:  16CR00388, 16AP00012 |
| | |
| Trial Judges: | Hon. Jeff Almquist<br>Hon. Timothy R. Volkmann<br>Hon. Paul P. Burdick<br>Hon. Paul Marigonda |
| | |
| Attorney for Appellant:<br>Andrew Kevin Williams | Jonathan Che Gettleman<br>Cabellero and Gettleman Law Offices, Inc.,<br>under appointment by the Court of Appeal |
| | |
| Attorneys for Respondent:<br>The People | Xavier Becerra,<br>Attorney General<br>Gerald A. Engler,<br>Chief Assistant Attorney General<br>Jeffrey M. Laurence,<br>Senior Assistant Attorney General<br>Catherine A. Rivlin,<br>Supervising Deputy Attorney General<br>Sara Turner,<br>Deputy Attorney General<br>Lisa H. Ashley-Ott,<br>Deputy Attorney General<br><br>Jeffrey S. Rosell,<br>District Attorney Santa Cruz County<br>Michael R. Mahan,<br>Assistant District Attorney Santa Cruz County |

*People v. Williams*
**H044771**